UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ROBERT STEIN *and* ROBERT BECK, *on behalf of themselves and all other persons similarly situated, known and unknown* <br><br> Plaintiffs, <br><br> v. <br><br> HHGREGG, INC., *doing business as* hhgregg; and <br><br> GREGG APPLICANCES, INC. *doing business as* hhgregg, <br><br> Defendants. | CASE NO. 15-396 <br><br> Judge Susan J. Dlott <br><br> Magistrate Judge Karen L. Litkovitz |

## **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

The system described in Plaintiffs' Amended Complaint is the very archetype of a "draw" or "advance" against future commission plan described in 29 CFR § 779.413(a)(5), 29 CFR § 779.416(a), and myriad court cases. These regulations expressly authorize "draws" against future commissions and "deductions" from future commissions to account for the deficit, or "excess," created by the draw 29 CFR § 779.416(a). Plaintiffs do not plausibly deny this. Instead, they advance a novel tautology: draws against future commissions may be legal—they grudgingly admit this in a footnote—provided they are "otherwise lawful," but they are not "otherwise lawful" when the draws constitute a "debt." In other words, Plaintiffs exchange the words "excess [payment]" found in the regulations with the word "debt," and hope this wordplay is sufficient to articulate a violation of the FLSA. But the FLSA does not succumb to such circular reasoning, and using more sinister-sounding words to describe a perfectly legal

compensation practice is not enough to survive a motion to dismiss. Plaintiffs' other claims, premised on their fundamental misunderstanding of the law, likewise fail.

Because the Amended Complaint describes a wholly compliant compensation plan, and alleges facts to support each element of the retail sales exemption, the Court should grant Defendant's motion to dismiss.

## I. ARGUMENT

**A.      Plaintiffs' Reply further illustrates hhgregg's compliance with the FLSA.**

Plaintiffs concede, as they must, that "the FLSA permits a 'draw system' and that draws may be credited against future commissions earned by retail sales employees." (Pls.' Resp. Opp'n Defs.' Mot. to Dismiss ("Pls.' Opp'n") [ECF No. 34] at 6.) Because this admission describes hhgregg's draw system as alleged in Plaintiffs' Amended Complaint, the inquiry should end and the case be dismissed.

**1.      Plaintiffs' new theory that hhgregg's commission-with-draw system does not pay a "fixed" draw cannot salvage their faulty FLSA claim.**

Plaintiffs struggle unsuccessfully to distinguish hhgregg's plan—as described in their Amended Complaint—from the plans repeatedly approved in the regulations, DOL opinion letters, and case law. (*See* Opening Br. at 5-9.) Grasping at straws, Plaintiffs note § 779.413(a)(5) refers to some plans' paying a "fixed weekly, biweekly, semimonthly, or monthly 'advance,' 'guarantee,' or 'draw.'" (Pls.' Opp'n at 6.) Plaintiffs seize on the word "fixed" and contend the FLSA's regulations require draws to be "paid in [a] fixed interval or fixed amount." (*Id.* at 6 & 8.) Plaintiffs do not cite any case or other authority holding that § 779.413(a)(5) or any other aspect of the FLSA imposes any such fixed-interval-or-amount requirement on draw payments. Nevertheless, Plaintiffs contend hhgregg's plan fails to satisfy this imaginary

requirement because "the draw is only paid when the commissions earned in a given work week do not meet the applicable minimum wage." (*Id.*)

Plaintiffs' effort to cast hhgregg's plan as unlawful under the FLSA on the basis of § 779.413(a)(5)'s reference to "fixed" draw payments fails. Section 779.413(a) does not require fixed draws. As a general matter, Section 779.413(a) describes some of the types of permissible plans used in practice and leaves open the possibility of additional plans beyond those described. Section 779.413(b) expressly states:

> The above listing in paragraph (a) of this section which reflects the typical methods of compensation is not, of course, exhaustive of the pay practices which may exist in retail or service establishments.

29 C.F.R. § 779.413(b). Thus, even if hhgregg's plan differed in some details from the plans described in § 779.413(a)(1)-(5), this would not mean hhgregg's plan is impermissible. And nothing in § 779.413(a)(5) suggests that its reference to "fixed" draws is intended to impose a requirement in this respect for all permissible plans.

In any event, Plaintiffs' Amended Complaint in fact *does* allege hhgregg pays its draw on a "fixed" basis similar to the plans described in §§ 779.413(a)(5) and 779.416(a). The Amended Complaint expressly alleges that "[t]he amount of the 'draw' (if any) is calculated ***on a weekly basis.***" (Am. Compl. ¶ 17 (emphasis added); *see also id.* ¶ 18 ("[T]he settlement period used for purposes of calculating commissions and determining the amount owed to Defendants by the Plaintiffs and Similarly Situated Employees under the 'draw' system is one week.").) *Cf.* 29 C.F.R. § 779.416(a) (noting draws are often "keyed to a time base and are ***usually paid at weekly or other fixed intervals***" (emphasis added)).

Finally, nothing in the FLSA regulations prevents the amount of draws paid at fixed intervals from being tied to the FLSA's minimum wage requirement. Indeed, paying draws on a

-3-

weekly basis to guarantee employees receive at least the minimum wage is perfectly consistent with 29 U.S.C. § 206(a). Nor, contrary to Plaintiffs' suggestion, does the FLSA require draws, fixed or not, be paid even in weeks when employees earn commissions in excess of the minimum wage. A plan that paid the draw every week *plus* (excess) commissions would not be a draw plan. It would be a salary-plus-commission plan, which is separately mentioned in the regulations. 29 C.F.R. § 779.413(a)(2) (describing "salary plus commission" method of payment). Plaintiff's interpretation would render the separate identification of draw plans and salary-plus-commission plans surplusage. This would violate standard rules of construction and make no sense under the FLSA. Since Plaintiffs point to no authority supporting such an untoward result (s*ee* Pls.' Opp'n at 6-7 & n. 4), Plaintiffs' attempt to distinguish hhgregg's draw system on the basis of the word "fixed" should be rejected.

> **2.** **Plaintiffs' wordplay concerning "debts" and "deductions" fails to give rise to a cognizable claim because hhgregg's system satisfies the FLSA regardless of semantics.**

Plaintiffs' Opposition also clings to Plaintiffs' erroneous theory that hhgregg's draw system is unlawful because it improperly creates a "debt" that is "deducted" from commissions in alleged violation of the FLSA. (*See, e.g.,* Pls.' Opp'n at 6-7, 11-12.) Plaintiffs argue:

> [T]he draws paid to commissioned employees are not, as the regulation states, 'supplemented by any additional amount by which [their] commission earnings exceed the amounts previously paid.' To the contrary, the Amended Complaint avers that the draws paid to Plaintiffs and prospective class members instantly create a debt owed to hhgregg per Defendants' policy and practice. That is, it is nothing more than a loan to be recovered the very next week, assuming the next week's commissions earned exceed the minimum wage plus the amount to be recovered.

Pls.' Opp'n at 6-7.

In Plaintiffs' view, this case comes down to a fundamental question: when hhgregg pays commissions to its salespeople, does it (A) *supplement* their draws with the additional

-4-

-5-

commission payments earned in excess of the draws already paid (which Plaintiffs concede is lawful), or (B) *deduct* their draws as "debts" from the total commissions earned in order to calculate the additional commissions to be paid (which Plaintiffs contend is unlawful). But Plaintiffs never attempt to explain the legal or logical difference between A and B, perhaps because there is none. Whether one is "supplementing" two with two to get four, or "deducting" two from four to get two, the numbers remain the same. An employee who has already been paid a $2 draw against a $4 commission receives an additional $2 in commission payments, regardless whether one uses the terminology of A or B. The distinction between the two descriptions is linguistic (like "six of one and half dozen of the other"), not a legal or factual difference.

Plaintiffs thus admit in one breath that "draws may be credited against future commissions earned by retail sales employees," and they argue in the next breath that draws cannot be viewed as "debts" that are "deducted" from future commissions. Plaintiffs' verbal contortions do not change the fact that draw systems like the one they allege hhgregg uses are lawful under the FLSA. (*See* Opening Br. at 5-9; 29 C.F.R. § 779.413(a)(5) ("At periodic intervals a settlement is made at which time the payments already made are supplemented by any additional amount by which his commission earnings exceed the amounts previously paid.").)

B.     **The Cases and Other Authorities Cited by Plaintiffs Are Inapposite.**

    1.     **Unlike this case, *Bowman* involved a suspect "annual draw" that functioned like a salary and a counterclaim by the defendant to recover draw payments.**

Plaintiffs place significant reliance on *Bowman v. Builder's Cabinet Supply Co.*, 2006 WL 2460817 (E.D. Ky. 2006), in which the plaintiff argued her draw improperly created a debt. (Pl.'s Opp'n at 8-9.) But the *Bowman* court did not adopt the plaintiff's argument and instead

found the defendant's commission system suspect for a variety of reasons, none of which applies here. 2006 WL 2460817, at *9.

The plaintiff in *Bowman* was a kitchen designer who received an annual draw of $42,000, which resulted in a bi-weekly wage of $1,615.38. *Id.* at *1. Due to poor sales, the plaintiff's annual draw was reduced to $25,000, resulting in biweekly wages of $961.53. *Id.* Because of her continued poor sales, Plaintiff alleged her draw was further reduced to zero for some pay periods. The plaintiff filed suit, alleging minimum wage and overtime claims under the FLSA. The defendant filed a counterclaim seeking to recoup "unearned advances in the amount of approximately $8,000." (*Id.* at *1 n.4.)

In evaluating whether the plaintiff was compensated under a bona fide commission plan, the *Bowman* court appeared concerned whether the annual draw paid to plaintiff was actually a commission. The court noted that § 779.416(b) anticipated commissions would "vary in accordance with the employee's performance." *Id.* at *8 (quoting 29 C.F.R. § 779.416(b).) The court observed that the regulations also warned a commission rate was not bona fide "if the formula for computing the commissions is such that the employee, in fact, always or almost always earns the same fixed amount of compensation for each workweek." *Id.* (quoting 29 C.F.R. § 779.416(c).) The court also discussed *Viciedo*, in which the court held that the draw paid to certain employees was not a commission "but rather represented a flat compensation rate that was added to the amount of commissions earned." *Id.* at *8 n.10 (quoting *Viciedo*, 246 F. Supp. 2d at 898). Ultimately, the *Bowman* court concluded the defendant's pay plan "did not fit any of the plans recognized by the DOL as 'bona fide commission plans.'" *Id.* at *8.

In summarizing the parties' respective arguments, the *Bowman* court did note the plaintiff claimed the retail sales exemption would fail if the defendant were successful on its counterclaim

against her. *Id.* at *8. She argued that the defendant was "seeking, by virtue of its counterclaim, to recoup what money it actually paid to her, which could affect whether her rate of pay was more than one and one-half times the minimum wage and, therefore, whether the exemption applies." *Id.* at *8. She further contended the commission plan was not bona fide "because it had an inherent pitfall (*i.e.*, employees became indebted to Defendant if their monthly sales were insufficient to cover their draws)." *Id.* But, importantly, the court did not adopt these arguments.

*Bowman* is plainly distinguishable. Here, there is no question the draws paid by hhgregg to Plaintiffs are commissions rather than a salary or some other form of compensation: Plaintiffs admit they are paid on a 100% commission basis, and the fact Plaintiffs' draws are credited against their total commissions shows they are bona fide commissions. (*See* Opening Br. at 8-9.) And unlike the defendant in *Bowman*, hhgregg has not filed a counterclaim against the Plaintiffs that seeks to recoup payments previously made to them and which, if successful, might reduce Plaintiffs' regular rate of pay to nothing for some workweeks, giving rise to minimum wage issues. Finally, the *Bowman* court did not find—as Plaintiffs argue here—that draws paid under a bona fide commission plan may not be credited against (or, in Plaintiffs' parlance "deducted" from) total commissions earned.

### 2. Section 531.35, addressing "free and clear" wage payments, does not provide that draw payments fail to satisfy the FLSA's minimum wage requirement.

As set forth in hhgregg's Opening Brief, the statutory language of the FLSA, multiple regulations, numerous DOL opinion letters, and case law all demonstrate that draws may properly be credited against future commissions and satisfy the FLSA's minimum wage requirement. (Opening Br. at 5-9.) Disregarding all this authority, Plaintiffs instead cite a

regulation having nothing to do with draws and commissions. (Pls.' Opp'n at 11.) They rely on 29 C.F.R. § 531.35, which provides:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act. See also in this connection, § 531.32(c).

29 C.F.R. § 531.35. Plaintiffs argue that pursuant to § 531.35, draw payments cannot satisfy the FLSA's minimum wage requirement because draws that are credited against future commissions are not paid "free and clear." (Pls.' Opp'n at 11.) Plaintiffs also contend the multiple DOL Opinion Letters to the contrary are simply incorrect. (*Id.* at 10-11.)[1] The Court should reject Plaintiffs' unique reading that disregards all other guidance.

As noted in hhgregg's Opening Brief, the DOL has expressly and consistently opined—directly contrary to Plaintiffs' theory—that "[w]here an employer advances funds to a commission salesperson to satisfy the minimum wage requirement, this amount may be recovered from excess commissions earned in a subsequent settlement period." DOL Wage and Hour Opinion Letter, WH506, 1981 WL179034 (Mar. 3, 1981); *see also* DOL Wage and Hour Opinion Letter, 1998 WL 852727 (Feb. 23, 1998); DOL Wage and Hour Opinion Letter, FLSA2001-2, 2001 WL 1558951 (Feb. 14, 2001).

---

[1] Plaintiffs also cite *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, 1578 (11th Cir. 1985), but that case is irrelevant. There, the employer claimed it could deem commissions earned in excess of the minimum wage in one pay period to be carried forward to satisfy the minimum wage requirements in later pay periods. The court disagreed, holding that "[a] mere alteration of the employer's records that reflects excess commissions earned in the preceding period being applied toward the minimum wage for the current period will not suffice." *Id.* at 1579. Those are not the facts or claims alleged here.

Plaintiffs' invitation to this Court to reject the DOL's interpretation of its own regulations in its Opinion Letters should itself be rejected out of hand. The DOL is accorded significant deference in interpreting ***DOL regulations***. *See, e.g.*, *Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700, at *13 (M.D. Tenn. Sept. 26, 2006) ("Sixth Circuit jurisprudence indicates that an elevated level of deference should be given to Department of Labor ("DOL") opinion letters that interpret 'the Secretary's own regulation.'").

Plaintiffs also fail to show that § 531.35 applies to draws that are later credited against commissions. The regulation does not mention draws or commissions. And Plaintiffs do not discuss what "free and clear" means under the regulation. Indeed, they ignore the example contained in the regulation itself, *i.e.*, a "kick back" which reduces wages below statutory requirements. Thus, the regulation explains that requiring an employee to pay for tools necessary for the job in question would result in "a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." Here, Plaintiffs do not allege that hhgregg's crediting draws against commissions ever results in Plaintiffs taking home less than the minimum wage in any workweek. To the contrary, under hhgregg's commissions system, accumulated draws that would otherwise cut into the minimum wage are carried over to a later week when commissions exceed the minimum wage. (Am. Comp. ¶ 20.)

Similarly, Plaintiffs ignore the DOL's 1998 Opinion Letter in which the DOL agreed with an employer who proposed that employees "receive[d] minimum wage earnings '***free and clear***' when a subsidy [*i.e.*, a draw] [was] paid for that workweek and deducted from commissions earned but not paid in subsequent workweeks." DOL Wage and Hour Opinion Letter, 1998 WL 852727 (Feb. 23, 1998) (emphasis added).

Plaintiffs also argue that if they accumulated draws and ceased employment with hhgregg, "that money is still owed to the company." (Pls.' Opp'n at 11.) However, Plaintiffs' suggestion that they might "still owe" draws to hhgregg following the termination of their employment is entirely hypothetical and fails to state a claim under the FLSA or any other law. Plaintiffs do not allege that hhgregg has sought or obtained recovery of any commissions advanced to them *except* by crediting those draws against future commissions, which, as noted above, is expressly permissible under the FLSA.

Plaintiffs also contend that it is a "factual issue" whether hhgregg makes any effort "to collect draws after employees leave" and argue this issue is thus not appropriate for resolution on a motion to dismiss. (Pls.' Opp'n at 11 n.7.) Plaintiffs are wrong. This is not, and cannot be, a "factual issue" in this case because Plaintiffs do not *allege* they experienced a post-employment "collection" of a draw and the Amended Complaint does not allege any instance in which hhgregg collected a draw balance from them *except* by crediting the advance against future commissions.[2]

### 3. *Perez* is unpersuasive because it failed to discuss 29 C.F.R. §§ 779.413(a)(5), 779.416(a), or any of the other relevant authorities addressing draws against commissions.

Plaintiffs also rely heavily on *Perez v. Westchester Foreign Autos, Inc.*, 2013 WL 749497 (S.D.N.Y. Feb. 28, 2013), but that case is both distinguishable and unpersuasive. There, the plaintiffs alleged, in part, that they received salaries of $150 per week and draw payments of $150. *Id.* at *2. The plaintiffs further alleged that they worked between 45 and 60 hours per

---

[2] Theoretically, if an employer collected a draw balance from a departed employee in an actual cash re-payment, that employee might argue he or she did not receive minimum wages in the workweek initially covered by the returned draw. But if that happened (and there is no allegation in Plaintiffs' Amended Complaint it ever has), Beck and Stein would not have standing to allege that claim on behalf of this hypothetical employee because Beck and Stein do not possess any such claim themselves. Beck and Stein also would not be similarly situated to this hypothetical employee for purposes of 29 U.S.C. § 216(b). In any event, the burden on a plaintiff is to plead an ***actual claim and controversy***, not pose hypotheses.

week. *Id.* Based on these allegations, the plaintiffs contended the defendant failed to pay them minimum wages under the FLSA. *Id.*

In moving to dismiss the claims, the defendant argued the draws should be included in calculating whether plaintiffs received a minimum wage. *Id.* at *9. The court disagreed, relying—as Plaintiffs do here—on 29 C.F.R. § 531.35. *Id.* The *Perez* court concluded based on § 531.35 that the alleged draw payments were not paid "free and clear," were "kicked back" to the defendant when it credited them against future commissions, and thus did not count towards payment of the minimum wage. *Id.* Remarkably, the *Perez* court did not cite, acknowledge, discuss, or distinguish any of the regulations expressly dealing with draws against commission or the DOL opinion letters recognizing that the draws *can* satisfy the minimum wage. *Id.* (failing to cite or discuss 29 C.F.R. §§ 779.413(a)(5) and 779.416(a), among other authorities). By failing to recognize the relevant authorities on draws under the FLSA, *Perez* is a highly-dubious outlier, not persuasive—let alone binding—precedent.

Moreover, the *Perez* court's discussion of draw payments' not counting towards the minimum wage did not appear to change the outcome in that decision. The plaintiffs appeared to state minimum wage claims regardless whether their draw payments were included in the calculations. As noted above, the *Perez* plaintiffs alleged they were paid $300 per week, including the $150 draw, but worked between 45 and 65 hours per week. This meant that *even with the draw included,* the plaintiffs allegedly were paid between $4.62 and $6.67 per hour, which was below the applicable minimum wage of $7.25 per hour. *See id.* at *9 n.5.

Accordingly, the *Perez* court's discussion of whether draw payments count towards the minimum wage was not only highly unpersuasive but also mere *dicta*.[3]

### C. Plaintiffs Cannot Save Their Defective Off-the-Clock Work and Overtime Pay Claims by Shifting the Burden to hhgregg to Disprove a Hypothetical.

Plaintiffs' Amended Complaint alleges in conclusory terms that Plaintiffs worked "'off the clock' for substantial periods of time for which they received no compensation" and that hhgregg "failed to properly compensate Plaintiffs and Similarly Situated Employees at the rate of one and one-half times the lawfully required regular rate for all weeks in which overtime was actually worked" (Am. Compl. ¶¶ 36 &41). As set out in hhgregg's opening brief, Plaintiffs' off-the-clock allegations fail to state minimum wage or overtime claims because both allegations are premised on Plaintiffs' fundamental misunderstanding of how draws work under the FLSA. (Opening Br. 9-14.) .

In their opposition, Plaintiffs try to save their defective claims by improperly shifting the burden to hhgregg to disprove a hypothetical. (Pls.' Opp'n at 13.) They argue:

> If . . . Defendants contend that employees are exempt under § 207(i), then Defendants must show that employees are paid at a regular rate of pay in excess of one and one-half time the minimum wage for all hours worked, regardless of whether the employee has worked more or less than 40 hours. Because all hours worked were not recorded by clocking in, hhgregg essentially ignores those unclocked hours when determining how much money is owed to satisfy the minimum wage requirement of § 207(a) or the retail sales exemption in § 207(i).

(Pls.' Opp'n at 13.)

In essence, Plaintiffs reason that *if* an employee failed to report all his or her working time, and *if* that employee were earning only a draw or relatively low commissions in a particular

---

[3] Plaintiffs' reliance on *Martinez v. Ford Midway Mall, Inc.*, 59 So. 3d 168 (Fla. Dist. Ct. App. 2011), is equally misplaced. (Pls.' Opp'n at 16-17.) That state-court decision merely concluded that a claimant under Florida's Unemployment Compensation Law left his position for good cause in part because he claimed his employer failed to pay him a minimum wage even with the draw received. 59 So. 3d at 172 ("They would pay me less than minimum wage, about three or four dollars an hour, and I had to work Saturday and Sunday and work 60 hours and get paid $290, and I owed it to them.").

week, then it is theoretically possible the employee's pay rate in that workweek – when factoring in the time that the employee intentionally failed to report to hhgregg – could turn out to be below the rates required to sustain the exemption or meet the minimum wage. (Pls.' Opp'n at 13.)

In light of this speculative scenario, Plaintiffs contend hhgregg must prove that Plaintiffs *did not* work off-the-clock in every individual workweek. They further argue the Court cannot dismiss their claims because the Court must first "render a factual finding, for each work week covered by the period of limitations, that Defendants paid Plaintiffs and other retail sales employees commissions at a rate that equaled or exceed applicable minimum wage." (*Id.* at 14.) They further contend "[t]his of course cannot be determined until after discovery is completed." (*Id.*)

Plaintiffs' hypothetical—which presents a new theory that is not alleged in their Amended Complaint—fails to save their defective off-the-clock work and overtime claim. Plaintiffs must plausibly plead an *actual* violation of the minimum wage provisions of the FLSA, not merely articulate theoretical circumstances under which such a violation *may* be pled. Their failure to do so dooms their Complaint.

> 1. **Plaintiffs' Amended Complaint shows Plaintiffs were not eligible for overtime pay under § 207(i).**

Plaintiffs' own Amended Complaint shows on its face that Plaintiffs are ineligible for overtime pay under 29 U.S.C. § 207(i). Plaintiffs allege all the facts necessary to support the application of § 207(i). They allege they are (or were) paid 100% in commissions and that

hhgregg, under its draw systems, guarantees sales employees at least 1 1/2 times the minimum wage in each overtime workweek. (Am. Compl. ¶¶ 3, 17.)[4]

### 2. The burden is on Plaintiffs to plead cognizable claims, not pose hypotheticals.

Plaintiffs' Opposition cannot negate the admissions made by Plaintiffs' Amended Complaint. The hypothetical raised in Plaintiffs' Opposition—that adding in any additional time Plaintiffs' allege they worked off-the-clock might affect the calculation of whether, depending on the amount of commissions paid, they received minimum wages or 1 1/2 times the minimum wage under § 207(i)(1)—is pure conjecture.

Plaintiffs' argument presents a classic *Twombly/Iqbali* violation. The law is clear that the burden is on Plaintiffs to make factual allegations in their complaint that "raise a right to relief above the speculative level." *Bell Atlantic Crop. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," Plaintiffs cannot rely on labels, "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but must plead "***factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged***." *Ashcroft v. Iqbal*, 566 U.S. 662 678-79 (2009)

---

[4] The requirements of 29 U.S.C. §207(i) are:

No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if

(1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and

(2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i).

(emphasis added). "[O]nly a complaint that states a plausible clam for relief survives a motion to dismiss." *Id.* at 679 (quoting *Twombly*, 550 U.S. at 556).

Here, ***Plaintiffs do not allege that this speculative scenario has actually ever occurred to them or to any other employee.*** In short, Plaintiffs do not allege they were ever deprived of pay required under the FLSA because they underreported their working hours and, as a consequence, received draws and commissions that failed to equal or exceed the minimum wage (in non-overtime weeks) or exceed 1 1/2 times the minimum wage (in overtime weeks). Plaintiffs do not allege this hypothetical has ever occurred to them ***even once***.

To the contrary, Plaintiffs' Opposition makes clear that Plaintiffs do not know whether this hypothetical has occurred. To find out, they urge this Court to allow extensive discovery and individually assess every workweek worked by Plaintiffs. (Pls. Opp'n at 13.) Following Plaintiff's argument, their hypothetical requires discovery to:

1. Determine whether each Plaintiff claimed to work off-the-clock in each individual workweek throughout the two- or three-year statute of limitations period;

2. For each workweek involving alleged off-the-clock work, determine whether, adding in this alleged off-the-clock work, each Plaintiff worked greater or fewer than 40 hours in that work week;

3. If the resulting total was fewer than 40 hours, determine whether each Plaintiff's total alleged draws and commissions for that workweek divided by the total hours allegedly worked met or exceeded the minimum wage; and

4. If the resulting total was greater than 40 hours, determine whether each Plaintiff's total alleged draws and commissions for that workweek divided by the total hours allegedly

worked exceeded one-and-a-half times the minimum wage to sustain the § 207(i) exemption for that workweek.[5]

In short, Plaintiffs argue the only way to know *if* they might have minimum wage or overtime pay claims is first to engage in detailed week-by-week discovery. Plaintiffs thus get *Twombly/Iqbal* and the Federal Rules exactly backwards. In federal court, a party must first plead a plausible claim for relief to "unlock the doors of discovery." *Iqbal*, 566 U.S. at 678-79 (2009). Federal court litigation is not a vehicle for plaintiffs simply to test hypotheses, like scientists in a lab collecting and combing through data to see whether their theories might be confirmed by evidence in the real world.

Indeed, by failing to allege the scenario they pose has actually occurred to them, Plaintiffs not only fail to satisfy *Twombly/Iqbal*, they fall short of demonstrating standing and an actual "controversy" as required by Article III of the Constitution. To establish standing, a plaintiff must show (1) the plaintiff "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "the injury is fairly traceable to the challenged action of the defendant"; and (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). *See also Sierra Club v. Morton*, 405 U.S. 727, 734–35, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (the "injury in fact" test requires that the party seeking review be himself among the injured); *Am. Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 677 (6th Cir. 2007)

---

[5] Plaintiffs' new theory also makes clear this case, if allowed to proceed, would present highly-individualized issues completely unsusceptible to collective action treatment under 29 U.S.C. § 216(b). Indeed, deciding these four questions for just **one** Plaintiff would present **624 separate inquires** if a three-year statute of limitations were used (4 inquires X 52 weeks X 3 years). No plaintiff could possibly be representative of any other alleged person for purposes of these inherently-individualized questions.

(explaining that because "plaintiffs do not, and cannot, assert that any of their own communications have ever been intercepted" plaintiffs lack standing to challenge the National Security Agency's Terrorist Surveillance Program on Fourth Amendment grounds); *Brackfield & Associates P'ship v. Branch Banking & Trust Co.*, No. 3:14-CV-524-PLR-HBG, 2015 WL 5177737, at *3 (E.D. Tenn. Sept. 4, 2015) ("The Plaintiffs' Complaint does not allege a concrete and particularized injury. It is premised upon conjecture and requires the kind of speculation that the Supreme Court has prohibited. It would be purely 'hypothetical' to surmise that Plaintiffs' financial information has been disclosed or accessed by any Government agency.").

### 3. It is not hhgregg's burden to disprove Plaintiffs' hypothetical.

Plaintiffs also wrongly suggest § 207(i) is an affirmative defense on which hhgregg has the burden of proof. (*See* Pls.' Opp'n at 14 ("If . . . Defendants contend that employees are exempt under § 207(i), then Defendants must show . . . .").

Although § 207(i) is commonly referred to as the retail sales "exemption", it is not an exemption under the FLSA but rather part of the statutory provision defining the overtime pay requirement. *See* 29 U.S.C. § 207. It should therefore not be viewed as an affirmative defense upon which defendants have the burden of proof like the exemptions set out in 29 U.S.C. § 213. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 307 (7th Cir. 1986) ("Section 7(i) is not an affirmative defense . . . ."); *Kuntsmann v. Aaron Rents, Inc.*, 903 F. Supp. 2d 1258, 1267 (N.D. Ala. 2012) (explaining that the subsections of § 207, including §207(i), are statutory requirements, not exemptions or affirmative defenses); *see also Brock v. City of Cincinnati*, 236 F.3d 793, 810 (6th Cir.2001) (applicability of § 207(k) "to a given case is a matter of law dictated by § 207(a) itself ... rather than an 'exemption' in the nature of those in § 213(a), which employers must plead and carry the burden of proving apply to particular employees"). *But see*

*Horn v. Digital Cable & Commc'ns, Inc.,* 2009 WL 4042407, at *3 (N.D. Ohio Feb. 11, 2009) (characterizing § 207(i) as an affirmative defense without explanation).

In any event, even if § 207(i) were construed as an affirmative defense, hhgregg's motion to dismiss must be granted because "the face of [Plaintiffs' Amended Complaint] demonstrates that relief is barred by an affirmative defense." *Cheatom v. Quicken Loans*, 587 F. App'x 276, 279 (6th Cir. 2014); *see also Beamon v. Assurant Employee Benefits*, 917 F. Supp. 2d 662, 666 (W.D. Mich. 2013) ("[A]n affirmative defense may be raised in a Rule 12(b)(6) motion 'without resort to summary judgment procedure, if the defense appears on the face of the complaint.'"). As set forth above, the application of § 207(i) is established by Plaintiffs' own allegations in their Amended Complaint. (*See* Am. Compl. ¶ 1(Plaintiffs are "commissioned retail sales employees"); ¶ 15 (Plaintiffs' "compensation is 100% commission-based"); ¶ 17 (in overtime weeks, Plaintiffs are guaranteed at minimum a "'draw' [that] equals one and one-half (1 ½) times the applicable minimum wage for each hour worked").

### 4. An employee may not defeat his exempt status through his own unilateral conduct.

Finally, even if Plaintiffs' hypothetical did not otherwise fail to satisfy *Twombly/Iqbal*, their novel off-the-clock work theory would nonetheless fail to state a claim. Plaintiffs do not cite a single case during the FLSA's 75-plus year history in which a court has found that a retail sales employee lost his or her exempt status under § 207(i) because the employee failed to report all of his or her working time and thereby prevented the employer from paying him or her at the hourly rate necessary to sustain the exemption. Common sense holds that an employee should not be permitted to defeat his own exempt status by intentionally underreporting his own working time to his employer. Allowing such a claim would negatively incentivize retail sales employees to manipulate their time reporting so they could unilaterally defeat their exempt status

and later try to collect overtime pay and liquidated damages as pure windfall. This Court has already recognized a similar risk in rejecting another type of off-the-clock claim. *See, e.g*, *Jungkunz v. Schaeffer's Inv. Research, Inc.* No. 1:11-cv-00691, 2014 WL 1302553, at *6 (S.D. Ohio Mar. 31, 2014) ("[A]n employer does not violate the FLSA when its employee performs uncompensated work but deliberately prevents the employer from discovering it.").[6]

## II. CONCLUSION

Plaintiffs' Amended Complaint is premised on a basic misunderstanding of the FLSA. Even accepting Plaintiffs' factual allegations as true for purposes of this motion, those allegations fail to state any claim under the FLSA. Plaintiffs' Amended Complaint should be dismissed with prejudice, and all other appropriate relief granted to hhgregg.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: s/ Christopher C. Murray
  Danuta Bembenista Panich, Atty. No. 27497-49 (IN)
  Robert F. Seidler, Atty. No. 0074178
  Christopher C. Murray, Atty. No. 15561-49 (IN)
  Michelle Maslowski, Atty. No. 27238-49 (IN)
  111 Monument Circle, Suite 4600
  Indianapolis, Indiana 46204
  Telephone: (317) 916-1300
  Facsimile: (317) 916-9076
  *danuta.panich@ogletreedeakins.com*
  *robert.seidler@ogletreedeakins.com*
  *christopher.murray@ogletreedeakins.com*
  *michelle.maslowski@ogletreedeakins.com*

  Attorneys for Defendants hhgregg, Inc., d/b/a hhgregg, and Gregg Appliances Inc., d/b/a hhgregg

---

[6] Plaintiffs concede their "commission manipulation" allegation fails to state an FLSA claim, and they cannot explain why it should not be dismissed. (Pls.' Opp'n at 19-20.) They also acknowledge their willful violation and unjust enrichment claims stand or fall with their FLSA claims. (*Id.* at 20.)

## CERTIFICATE OF SERVICE

      I hereby certify that on October 19, 2015, a copy of the foregoing *Defendants' Reply in Support of its Motion to Dismiss* was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's CM/ECF system.

              Michael J. O'Hara
              Aaron M. Beck
              Megan E. Mersch
              O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT
              *mohara@ortlaw.com*
              *aaronbeck@ortlaw.com*
              *mmersch@ortlaw.com*

              Peter L. Cassady
              Kristen M. Myers
              BECKMAN WEIL SHEPARDSON LLC
              *petercasady@beckman-weil.com*
              *kmyers@beckman-wiel.com*


                                s/ Christopher C. Murray

22718962.1