IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Robert Stein, *et al.*, | : | Case No. 1:15-cv-396 |
| | : | |
| Plaintiffs, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | Order Granting Defendants' Motion to |
| | : | Dismiss |
| hhgregg, Inc., *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 27), to which

Plaintiffs have responded and Defendants have replied.  (Docs. 34, 37.)  For the reasons that

follow, Defendants' Motion to Dismiss will be **GRANTED**.

I.       BACKGROUND

    A.  Facts[1]

        This is a wage and hour dispute brought pursuant to Fair Labor Standards Act ("FLSA"),

29 U.S.C. §§200, *et seq*. against Defendant hhgregg, Inc., d/b/a hhgregg, and its wholly-owned

subsidiary, Defendant Gregg Appliances, Inc., d/b/a/ hhgregg (collectively, "hhgregg").

        Defendants own and operate over 220 retail stores throughout the United States.  One

such store is located on Fields Ertel Road in Hamilton County, Ohio, which has been the site of

employment to both Plaintiffs Robert Stein and Robert Beck.  Stein has been employed by

hhgregg as a retail sales employee since March 2008; Beck was previously employed by hhgregg

as a retail sales employee from November 2011 until March 2015.  Plaintiffs bring this action on

---

[1] The Court has drawn the background facts from Plaintiffs' Amended Complaint (Doc. 10) unless otherwise
indicated.

behalf of themselves and all current and former similarly situated retail sales employees employed at hhgregg stores throughout in the United States.

**1. Draw-on-Commission Policy**

hhgregg compensates its retail sales employees entirely through commission, including use of a draw-on-commissions policy.  Under the policy, the amount, if any, of a draw-on-commissions is calculated on a weekly basis.  In a week in which an employee works forty hours or less, the draw equals minimum wage for each hour worked minus the amount of commissions earned.  In a week in which an employee works more than forty hours, the draw equals one and one-half times the minimum wage for each hour minus the amount of commissions earned.  In a week in which commissions earned are greater than the minimum wage or one and one-half times the minimum wage, whichever applies, an employee is paid commissions and no draw.

A draw is repaid to the Defendants by deducting its amount from commissions earned during the following week, assuming the difference after the draw repayment exceeds the minimum wage obligation for that week.  If commissions are "insufficient" to cover repayment, the amount of the outstanding draw is deducted from the soonest pay period in which the minimum wage standard is met.  This repayment calculation continues until the outstanding draw is repaid to Defendants.  Plaintiffs allege that upon termination of employment, regardless of the reason, Defendants continue to hold its employees liable for unpaid draw.

**2. Tacit and Express Approval of Off-the-Clock Work**

Defendants' managers require retail sales employees to attend in-store and off-site training, other business meetings, and exposition shows, despite that fact that no commissions can be earned during these sessions.  The employees clock out and continue to work to avoid incurring overtime, which would increase their draw.  This practice occurred with the tacit – and

2

sometimes express – approval of Defendants' managers.  Employees can be disciplined up to and including termination of employment, if they too frequently fall subject to the draw system or accumulate too large a draw balance.

### 3. Commission Reduction Upon Customers' Return of Discounted Merchandise

Under the commission structure, Defendants deduct the commission credited to an employee for an item that is returned by the customer.  In the case of a product purchased at a discounted price, retail sales employees earn a commission on the lower price.  But where a customer returns a product that was purchased at a discounted price, Defendants deduct from its retail sales employees' earned commissions what the commission *would have been* had the product been sold at full retail price.  According to Plaintiffs, this practice forces them into the draw system.

### A. Procedural History

Plaintiffs initiated this lawsuit on June 15, 2015 and filed their Amended Complaint on July 9, 2015 in which they assert six claims against Defendants.  (Doc. 10.)  Plaintiffs allege: (1) Defendants' draw system violates 29 U.S.C. § 206(a) and §§207(a) and (i); (2) Defendants' practice of encouraging and condoning Plaintiffs to work off the clock deprived them and similarly situated employees of earned wages and compensation in violation of 29 U.S.C. § 206(a) and §§207(a) and (i); (3) Defendants' policy of manipulating the calculation of commissions violates 29 U.S.C. § 206(a) and (i); (4) Defendants' failure to compensate Plaintiffs and similarly situated employees at the proper rate of pay for weeks in which overtime was worked violates 29 U.S.C. § 207(a); (5) Defendants' compensation practices were willful violations of the FLSA; and (6) Defendants' practices constitute unjust enrichment.  Plaintiffs seek an opportunity for similarly situated employees to opt-in to the litigation, restitution for the

3

portion of the minimum wage that Plaintiffs and similarly situated employees have not received; compensation for overtime work; compensation for unpaid wages and commissions; liquidated damages; attorneys' fees and costs; and any other relief to which Plaintiffs and similarly situated employees may be entitled.

On July 17, 2015, Plaintiffs filed a Motion for Conditional Certification and to Facilitate § 216(b) Notice with Supporting Memorandum and Declaration of Robert Stein and Affidavit of Robert Beck and Proposed Notice to Potential Class Members Attached (Doc. 13), to which Defendants have responded in opposition and Plaintiffs have replied. (Docs. 29, 33.) Following an August 17, 2015 status conference with the Court, on August 21, 2015, Plaintiffs filed a Motion for Interim Relief to Extend the Tolling Period and to Provide Corrective Notice to Prospective Class Members. (Doc. 26.) On August 31, 2015, Defendants filed the instant Motion to Dismiss (Doc. 27), to which Plaintiffs have responded and Defendants have replied. (Docs. 34, 37.) On February 16, 2016, the Court held a hearing on both the Motion to Dismiss and the Motion for Conditional Certification.[2]

## I.      LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in a light

---

[2] Because the Court finds Defendants' Motion to Dismiss to be well-taken, it need not consider the merits of Plaintiffs' Motion for Conditional Certification and to Facilitate § 216(b) Notice (Doc. 13) and Plaintiffs' Motion for Interim Relief to Extend the Tolling Period and to Provide Corrective Notice to Prospective Class Members (Doc. 26). These Motions are DENIED as MOOT.

most favorable to the plaintiff and accept the factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The Court "need not, however, accept conclusory allegations or conclusions of law dressed up as facts." *Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012).

## II.     ANALYSIS

Defendants move to dismiss Plaintiffs' Amended Complaint on the basis that it fails to state any cognizable claim. The Court agrees, and will consider the viability of each of Plaintiffs' claims in turn.

### A.  Draw-on-Commissions Policy

In Count I, Plaintiffs allege that Defendants' draw system violates both overtime and minimum wage requirements of the FLSA. The FLSA imposes two fundamental requirements upon employers: to pay employees a minimum wage, 29 U.S.C. § 206(a), and to pay employees overtime compensation at the rate of one and one-half times the employees' regular rate of pay for hours worked in excess of forty hours per week, 29 U.S.C. § 207(a)(1). An employer's minimum wage obligation may be met through a variety of compensation structures, including the payment of commissions. *See, e.g.*, 29 C.F.R. § 778.117. Employees who are paid primarily on a commission basis meeting the requirements of the retail or service establishment exception are exempt from the overtime requirement when the following conditions are met:

> (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i). "In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed

commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee." *Id.*

### 1. Retail or Service Establishment Exemption

Defendants argue the Complaint allegations establish that Plaintiffs are exempt from overtime and that the pay plan at issue is legal.  The Court will first consider the applicability of the retail or service establishment exemption from overtime pay and whether Plaintiffs' allegations demonstrate that both prongs of the test are met.  Plaintiffs allege that any draws they received were calculated by deducting the "minimum wage for each hour worked minus the amount of commissions earned" and, in weeks in which Plaintiffs worked overtime, by "one and one-half (1 ½) times the applicable minimum wage for each hour worked minus the amount of commission earned."  (Doc. 10 at PageID 53, ¶ 17.)  This allegation therefore establishes that Plaintiffs' regular rate of pay was in excess of one and one-half times the minimum hourly rate under the first prong of the retail and service establishment test.  *See* 29 U.S.C. § 207(i).  And Plaintiffs' allegation that, at all times, "Defendants have informed the Plaintiffs and Similarly Situated Employees that their compensation is 100% commission-based" meets the second prong of the retail or service establishment exemption test.  *See* 29 U.S.C. § 207(i).  The remaining issue, therefore, is whether Plaintiffs were paid a "bona fide commission rate" as set forth in 29 U.S.C. § 207(i).  Thus, the Court must determine whether Plaintiffs state a viable minimum wage and/or overtime pay claim where the basis for the alleged FLSA violations is that Plaintiffs were paid a *draw* on commissions.

"[N]either the FLSA nor the United States Department of Labor ("DOL") implementing regulations provide a definition for the term 'commissions' as it is used in the retail or service exemption."  *See McAninch v. Monro Muffler Brake Inc.*, 799 F. Supp. 2d 807, 813 (S.D. Ohio

2011).  "Indeed, the meaning of a 'commission' under the FLSA 'is an issue that finds little illumination from the sparse case law and the vague references in statutes and regulations.'"  *Id.* (citing *Owopetu v. Nationwide CATV Auditing Servs., Inc.*, No. 5:10-cv-18, 2011 WL 883703, at *3 (D. Vt. Mar. 11, 2011) (quoting *Klinedinst v. Sift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001))).  Whether an employer is exempt from the overtime wage requirement is a question of law.  *Id.*  (citing *Keyes v. Car-X Auto Serv.*, No. 1:07-cv-503, 2009 WL 4110144, at *2 (S.D. Ohio Sept. 30, 2009)).

Defendants argue, and the Court agrees, that the draws-on-commission Plaintiffs experienced from week to week as described in Plaintiffs' Amended Complaint meet the definition of a bona fide commission plan based on both a plain reading of the FLSA regulations and other courts' consideration of similar pay plans.  However, the Court notes that for reasons expounded upon *infra*, the compensation plan is by no means a model policy.

The DOL regulations recognize that employees of retail or service establishments usually are compensated in any one of five ways, including: (1) straight salary or hourly rate; (2) salary plus commission; (3) quota bonus; (4) straight commission without advances; and (5) straight commission with "advances," "guarantees," or "draws."  Commission with draws is defined as follows:

> (5) Straight commission with "advances," "guarantees," or "draws."  This method of compensation is similar to paragraph (a)(4) of this section[3] except that the employee is paid a fixed weekly, biweekly, semimonthly, or monthly "advance," "guarantee," or "draw."  At period intervals a settlement is made at which time the payments already made are supplemented by any additional amount by which his commission earnings exceed the amounts previously paid.

---

[3] Section (a)(4) reads: "(4) Straight commission without advances: Under this method of compensation the employee is paid a flat percentage on each dollar of sales he makes."

29 C.F.R. § 779.413(a)(4)–(5).[4]  Under 29 C.F.R. §779.416, commissions on goods and services to be paid to an employee of a retail or service establishment are described as including periodic payments, such as draws, which are "keyed to a time base and are usually paid at weekly or other fixed intervals which may in some instances be different from and more frequent than, the intervals for payment of any earnings computed exclusively on a commission basis."  29 C.F.R. § 779.416(a).  Such payments are "normally smaller in amount than the commission earnings expected for such a period and if they prove to be greater, a deduction of the excess amount from commission earnings for a subsequent period, if otherwise lawful, may or may not be customary under the employment arrangement."  *Id*.  The Court agrees with Defendants that the applicable pay plan, as applied to Plaintiffs, best fits the straight commission plan with an advance or draw on of the employee's applicable minimum wage and/or overtime pay.

Other courts have considered compensation arrangements that are similar to Defendants' plan and found that they comport with the FLSA.  In *McAninch*, *supra*, the court considered a pay plan for managers and assistant managers in which the employer utilized a daily and aggregate annual draw.  799 F. Supp. 2d at 812, 817.  The plan subjected them to monthly and quarterly periodic settlements that always included the addition of earned commissions in excess of the draw, as well as the possible recovery of unearned draw.  *Id*. at 817.  The fact that it provided for periodic settlement, whereby draws were supplemented by the additional amounts of commissions earned, weighed heavily in favor of a finding that the plan was bona fide.  *Id*. at 817–18.

---

[4] The list in 29 C.F.R. § 779.413(a) is not exhaustive of the pay practices that may exist in retail or service establishments.  29 C.F.R. § 779.413(b).

Additionally, in *Lee v. Ethan Allen Retail, Inc.*, 651 F. Supp. 2d 1361, 1366 (N.D. Ga. 2009), the court considered whether an employer denied its design consultants overtime wages in violation of the FLSA. Ethan Allen paid its design consultants a bi-weekly, non-recoverable draw for the first four months of employment and were paid commissions on sales exceeding the draw. *Id*. at 1363. After the four-month period, Ethan Allen paid its design consultants through a bi-weekly, *recoverable* draw. *Id*. If a design consultant failed to earn enough in commissions to cover the draw, the design consultant carried forward a deficit. *Id*. Thereafter, Ethan Allen would reduce any deficit from prior months by the amount that commissions exceeded the draw. *Id*. In granting summary judgment, the court concluded that the employer's commission rate was bona fide; the rate was set in good faith and was not a superficial attempt to categorize the design consultants' earnings as commissions in order to avoid having to pay overtime. *Id*. at 1366–67.[5]

Plaintiffs argue that Defendants' pay plan does not fit into the statutory definition, and advance several theories in support of its position – none of which the Court ultimately finds persuasive. Plaintiffs contend that Defendants' commission structure does not comply with the

---

[5] Defendants also rely upon *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246 F. Supp. 2d 886, 898 (S.D. Ohio 2003), but that case has limited applicability here. Employees under the relevant pay ("Level I") plan were paid a predetermined amount of money on a bi-weekly basis, which was referred to as a non-recoverable draw. *Id*. at 896. In addition, they also were paid a commission that equaled five percent of the amount collected from sales. *Id*. If the employee collected less than $10,000, his non-recoverable draw was reduced by the amount of the five percent commission, so that the compensation did not exceed the amount of the non-recoverable draw. *Id*. On the other hand, if the employee collected more than $10,000, then his five percent commission was added to the non-recoverable draw. *Id*. In determining that the plan did not constitute a draw-on-commissions plan, the court noted that the draw did not represent a portion of the commissions earned, but, rather, a flat compensation rate added to the total amount of commissions earned. *Id*. at 898. Regardless of whether the Level I plan constituted a salary plus commission, quota bonus plan, or a hybrid of both, the pre-determined compensation referred to by the employer as a non-recoverable draw did not represent commissions. Thus, the court needed only to determine whether the true commissions earned by plaintiffs accounted for at least fifty percent of their total compensation, and the employer failed to demonstrate that was the case. *Id*. These obvious factual distinctions render *Viciedo* inapposite.

9

FLSA, because payments to retail sales employees are not fixed.  But the Amended Complaint alleges hhgregg calculates the draw on a weekly basis, although the amount of the draw may vary.  *See* Doc. 10 at ¶ 17 ("The amount of the 'draw' (if any) is calculated on a weekly basis."); *see also id.* ¶ 18 ("[T]he settlement period used for purposes of calculating commissions and determining the amount owed to Defendants by the Plaintiffs and Similarly Situated Employees under the 'draw' system is one week.")  And, in any event, 29 C.F.R. § 779.413(b) contemplates that the five commission methods described are not exhaustive of pay practices that may exist in retail establishments.  *See* 29 C.F.R. § 779.413(b).  Moreover, Plaintiffs have not identified authority that states that the FLSA prevents the amount of draws paid at fixed intervals from being tied to the FLSA's minimum wage requirement.

Plaintiffs also contend the draws paid to hhgregg's commissioned employees "are not, as the regulations states, 'supplemented by any additional amount by which his commission earnings exceed the amounts previously paid'" because they carry a debt to be recovered to the extent the next week's commissions exceed the debt burden.  (Doc. 34 at PageID 341.)  Yet the Court agrees with Defendants that this distinction is illusory: "[w]hether one is 'supplementing' two with two to get four, or 'deducting' two from four to get two, the numbers remain the same." (Doc. 37 at PageID 367.)

Plaintiffs direct the Court to *Bowman v. Builder's Cabinet Supply Co.*, No. 04-201, 2006 WL 2460817 (E.D. Ky. Aug. 23, 2006), but that case is readily distinguishable.  There, a kitchen and bath designer/ sales representative was paid a non-recourse draw or advance during the first ninety days of her employment.  *Id.* at *1.  Once the ninety-day period ended, if the plaintiff's monthly sales were below her goal, she would receive her draw, but would become indebted to her employer for the deficiency.  *Id.*  Because of poor sales, the plaintiff's annual draw and

biweekly wage were reduced. *Id*. Ultimately, she was informed, again because of poor sales, that she would no longer *receive* a draw. *Id*. The court denied the defendant's motion for summary judgment, and found that "[u]nder these circumstances, the court concludes that the 'retail or service establishment' exemption does not apply" to the time period in which plaintiff claimed she did not receive any draw. *Id*. at *9. The court further found the defendant failed to meet its burden in demonstrating that the plaintiff was compensated according to a bona fide commission plan. *Id*. Although Plaintiffs attempt to analogize *Bowman* to this case, it is distinguishable; here, plaintiffs do not allege that there were any weeks in which plaintiffs received no wages.

The Court also rejects Plaintiffs' argument that the commissions paid to them were not bona fide, because they were not paid "free and clear" to Plaintiffs. In support of this argument, Plaintiffs cite 29 C.F.R. § 531.35, which states:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

29 C.F.R. § 531.35. However, and persuasive to this Court, the DOL, through Opinion Letters, consistently has offered the opinion that pay plans that draw on commissions meet the employer's minimum wage obligation.[6] *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion

---

[6] Although these Opinion Letters are not binding on the Court, they constitute a "body of experience and informed judgment" that are to be given "substantial weight." *Wolfram v. PHH Corp*., No. 1:12-CV-599, 2014 WL 2737990, at *5 n.8 (S.D. Ohio June 17, 2014) (citing *Flood v. New Hanover Cnty*., 125 F.3d 249, 253 (4th Cir. 1997)).

Letter, 2001 WL 1558951 (Feb. 14, 2001); U.S. Dep't of Labor, Wage & Hour Div., Opinion

Letter, 1998 WL 852727 (Feb. 23, 1998); U.S. Dep't of Labor, Wage & Hour Div., Opinion

Letter, 1981 WL 179034 (March 3, 1981).

  In an analogous example, in its Opinion Letter dated March 3, 1981, the DOL considered

whether an automobile dealer who employed mechanics in the service department was meeting

its minimum wage requirement.  1981 WL 179034, at *1.  The mechanics received a 50%

commission on all service work performed and were paid on a weekly basis.  *Id*.  Their hours of

work were recorded on a time clock, and each week, mechanics received the minimum wage by

way of his or her commissions or a subsidy provided by the employer.  *Id*.  When the

commissions exceeded the minimum wage for the week, the employee received total

commissions earned less any subsidy.  *Id*.  If a minimum wage subsidy was paid, it was carried

forward and charged against commissions earned but not paid in subsequent workweeks.  *Id*.  In

those future weeks, the subsidy or offset was credited against commission earnings in excess of

the minimum wage.  *Id*.

  In answering the question of whether the employee employed under the above facts

received his minimum wage earnings "free and clear," the DOL concluded:

> When compensating commission salespersons exempt from the overtime pay
> requirements of the Act, employers may adopt pay arrangements whereby such
> employees are guaranteed not less than the applicable minimum wage for each
> hour of work during the settlement period.  The only requirement is that the
> employee receives "prompt payment" of the minimum wage covering all hours
> worked during the settlement period.  Where an employer advances funds to a
> commission salesperson to satisfy the minimum wage requirement, the amount
> may be recovered from excess commissions earned in a subsequent period.

1981 WL 179034, at *1.  The DOL consistently has applied this principle in Opinion Letters

issued in 1998 and 2001.  *See* 1998 WL 852727; 2001 WL 1558951.

The Court notes one important difference between the facts here and the facts presented in both the 1981 and 1998 DOL Opinion Letters, however.  In both of the factual scenarios presented in the DOL letters, an employee whose employment ended with an outstanding minimum wage subsidy left employment with no further claim against him or her for the balance, and the employee received minimum wage in his or her final paycheck.  *See* 1998 WL 852727, at *1; 1981 WL 179034, at *1.  In this case, Defendants' compensation plan states the *opposite:* that the employee *is liable* to hhgregg and obligated to pay any minimum wage deficiency, and that hhgregg will have the right to demand payment of and the sales associate will be obligated to pay that deficiency.  The Court seriously questions the legality of deficiency repayment at the end of an employee's employment in circumstances in which "repayment" of minimum wage advanced to the employee through the draw system will deny the employee of his or her minimum wage.  But in this case, there have been no facts alleged demonstrating that hhgregg *enforces* that aspect of its compensation plan when employment is terminated or ended. In particular, Beck, who no longer works at hhgregg, has made no such allegation.  Were that the case, the Court's analysis would be very different.  Thus, the Court is persuaded the DOL letters are analogous to the factual scenario presented by Plaintiffs here, but stresses that its ruling turns on the application of the policy under the facts presented in the Complaint.  It by no means finds Defendants' pay policy to be a model.

Finally, Plaintiffs argue the DOL misinterprets the FLSA and urges the Court to instead adopt the analysis of *Perez v. Westchester Foreign Autos, Inc.,* No. 11CIV6091, 2013 WL 749497, at *8–9 (S.D.N.Y. Feb. 28, 2013), in which the court considered whether weekly draws received by the plaintiffs should be considered when calculating whether they were paid minimum wage.  In *Perez*, sales consultants were paid salary plus commission up until August

13

2010; thereafter, defendants implemented a draw system through which sales consultants received a base salary, plus a draw of up to a certain amount against future commissions. *Id*. at *2. Plaintiffs averred that the sales consultants were paid only the guaranteed amount free and clear, as the draw was simply an advance that had to be paid back to the defendants. Similarly, sales managers were paid on a salary plus commission basis, with a base salary and a draw against future commission beyond that base salary. *Id*. at *3.

The court found that a minimum wage must be paid free and clear of deductions or kickbacks under 29 C.F.R. § 531.35, and as such, employers may not require that their employees give any money back to them, if their resulting compensation falls below the minimum wage. *Id*. at *9. Thus, money that an employee "kicks back" to the employer must be excluded from calculating the employee's wages. *Id.* On this basis, the court found that sales consultants and sales managers alleged FLSA violations in weeks in which they worked more than forty-five hours. *Id*. at *10. Notably, this decision fails to address 29 C.F.R. §§ 779.413(a)(5) and 779.416(a), or other authorities discussing draws against commissions, including the DOL's Opinion Letters focusing this very issue. Accordingly, the Court declines following the logic of *Perez* and instead finds more persuasive the DOL Opinion Letters.

In sum, the Court concludes that Plaintiffs have alleged facts demonstrating that they were employees of a retail or service establishment, which exempts them from overtime pay. Thus, their allegations that Defendants' draw-on-commission plan denied them minimum wage and overtime fails to state a claim upon which relief may be granted.

### A. Off-the-Clock Allegations

Count II alleges that retail service employees were required to attend non-commission-generating work events, such as trainings and meetings. Plaintiffs assert that Defendants

allowed and even encouraged them to work off the clock during these events, depriving retail sales employees of minimum wage and overtime.  The Court finds that this claim likewise fails.

Plaintiffs argue that if they are exempt under § 207(i) as Defendants contend, Defendants in turn must show that they are paid at a regular rate of pay in excess of one and one-half times the minimum wage for *all* hours worked, regardless of whether they actually have worked more or less than forty hours in a week.  Plaintiffs assert that, because all hours worked were not recorded by clocking in, hhgregg necessarily ignores the unclocked hours when determining how much money is owed to satisfy the minimum wage requirements of § 207(a) or the retail sales exemption of § 207(i).  Plaintiffs claim that "[u]ntil all hours are recorded and considered, hhgregg cannot accurately demonstrate that they meet the mandate under either FLSA provision."  (Doc. 34 at PageID 348.)

Plaintiffs do not cite any authority to support their position that Defendant must affirmatively come forward with evidence at this stage in the litigation that each of them was paid in accordance with applicable minimum wage.  As noted earlier by the Court, at this stage it is Defendants' burden to establish that Plaintiffs' allegations, if taken as true, fail to state a claim upon which relief may be granted.  Defendants have done just that, demonstrating that Plaintiffs fall under the overtime exception of § 207(i) by virtue of the facts pled in the Amended Complaint.  The Court rejects Plaintiffs' argument that Defendants have an obligation to conduct discovery or offer extrinsic evidence demonstrating what each Plaintiff was paid for each week to meet this burden.

Plaintiffs also argue in their opposition brief that if an employee failed to report all of his or her working time, and if that employee were earning only a draw or relatively low commission in a particular week, it is possible that the employee's rate of pay for that

15

workweek, when factoring in the "off-the-clock" time, could turn out to be below minimum wage or that which is required to sustain the overtime exemption.  But Plaintiffs have not pled specific facts to establish that either Stein or Beck was paid less than the requisite minimum wage or that which is sufficient to meet the overtime exemption or that they were actually denied.   Under Federal Rule of Civil Procedure 8, Plaintiffs cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" but instead must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.  Complaint allegations do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678–79.  Plaintiffs' hypothetical factual scenario is not grounded in facts pled in the Amended Complaint; as such, they have failed to state a claim under Count II.

### B.  Commission Manipulation

In Count III, Plaintiffs allege that hhgregg reduces commissions earned when products purchased at discounted prices are returned.  Plaintiffs allege that when the commission reduction puts an employee in draw, it necessarily violates the employer's obligation under the FLSA.  Plaintiffs assert the Court will not be able to determine whether the commission reduction runs afoul of the FLSA until discovery is conducted.

The Court agrees with Defendants that Count III also fails to state a claim upon which relief may be granted.  Commission payment plans are generally a creature of contract, and Plaintiffs' Amended Complaint does not describe the terms of the commission contract sufficiently to allege a breach. *See Braddock v. Madison Cnty.*, 34 F. Supp. 2d 1098, 1112 (S.D. Ind. 1998) ("The FLSA does not provide a federal remedy for any and all breaches of payment obligations under employment contracts.")   Further, Plaintiffs have not pled specific facts to

16

establish that either Plaintiff was paid less than the requisite minimum wage or denied overtime

by virtue of Defendants' commission reduction structure, and Plaintiffs suggested at oral

argument on the Motion to Dismiss that this claim rose and fell with its theory that draws on

commissions are illegal.  For these reasons, Plaintiffs' Count III fails to state a claim upon which

relief may be granted.

### C.  Remaining Allegations

Plaintiffs' Count IV alleges that Defendants violated the FLSA by failing to compensate

retail sales employees at the rate of one and one-half times the lawfully required regular rate for

all weeks in which overtime was worked in violation of § 207(a).  Count V alleges that

Defendants willfully violated the FLSA, and Count VI alleges that Defendants' practices of

"misappropriating a portion of Plaintiffs' and Similarly Situated Employees' earned

commissions and failing to pay for hours worked were inequitable and constituted unjust

enrichment under applicable state laws."  (Doc. 10 at PageID 59.)

Count IV is insufficient to state a claim for violation of overtime for the reasons

discussed *supra*; namely, that the Amended Complaint allegations establish that Plaintiffs meet

the retail and service establishment exemption to overtime pay.  As no remaining FLSA claims

stand, Count V, alleging willful violations of the FLSA, clearly cannot stand.

Finally, the Court is skeptical that Plaintiffs can maintain their claim for unjust

enrichment.  Plaintiffs fail to specify under which "state laws" the claim is brought, and the

Court has found that the factual allegations upon which the claim rests do not support viable

FLSA violations.  Regardless, because no federal claims remain, the Court need not address the

merits of the unjust enrichment claim.  The Court will decline to exercise supplemental

jurisdiction over it, and will dismiss it without prejudice. *See* 28 U.S.C. §§ 1367(c);

*Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001).

**I.**     CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' Motion to Dismiss (Doc.

27).  In conjunction therewith, Plaintiffs' Motion for Conditional Certification and to Facilitate §

216(b) Notice with Supporting Memorandum and Declaration of Robert Stein and Affidavit of

Robert Beck and Proposed Notice to Potential Class Members Attached (Doc. 13) and Plaintiffs'

Motion for Interim Relief to Extend the Tolling Period and to Provide Corrective Notice to

Prospective Class Members (Doc. 26) are **DENIED AS MOOT**.  The Court declines to exercise

supplemental jurisdiction of Plaintiffs' remaining state claim of unjust enrichment and

accordingly orders this case closed on the docket.

IT IS SO ORDERED.

S/Susan J. Dlott                                        
Judge Susan J. Dlott
United States District Court

18